UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LOUISE RAFTER, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 14-1404 (RCL) |
| DEPARTMENT OF THE TREASURY, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM & ORDER

Before the Court is the defendants' motion to strike the plaintiffs' notice of voluntary dismissal [17]. Upon consideration of the defendants' motion [16], the plaintiffs' opposition [18] thereto, the defendants' reply [19], the applicable law, and the entire record herein, the Court will DENY the defendants' motion to strike.

### I.   BACKGROUND

This matter hinges on whether the complaint filed by the plaintiffs in this case was *automatically* consolidated with the Consolidated Class Action, *In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations*, No. 13 Misc. 1288, that this Court dismissed pursuant to its Memorandum Opinion in *Perry Capital LLC v. Lew*, No. 13 Civ. 1025, 2014 WL 4829559 (D.D.C. Sept. 30, 2014). As the Court will explain, no such automatic consolidation occurred.

This Court, then District (now Circuit) Judge Wilkins presiding, issued an Order consolidating seven lawsuits, each of which was "styled as a class action and/or a derivative action," into one Consolidated Class Action. Consolidation Order, *In re Fannie Mae/Freddie*

*Mac*, No. 13 Misc. 1288 (D.D.C. Nov. 18, 2013), ECF No. 1.  The Court noted that the Consolidation Order shall also apply to "each putative class action and/or derivative action that is subsequently filed in or transferred to this Court that relates to the same subject matter as in the Consolidated Class Action."  *Id.* ¶ 2.  Yet, as described below, the Consolidation Order further delineated a series of steps to be followed for consolidation to take place.  *See id.* ¶¶ 3, 6, 7.

The plaintiffs filed their complaint in this action against the Department of the Treasury and the Federal Housing Finance Authority ("FHFA") on August 15, 2014.  Compl., ECF No. 1.  The complaint featured purportedly *direct* claims for breach of fiduciary duty against FHFA and Treasury, among other claims.  *See id.* Counts V-VII.  A day earlier, the same plaintiffs in this case had filed a complaint in the Court of Federal Claims alleging derivative and takings claims.  Compl., *Rafter v. United States*, No. 14 Civ. 740 (Fed. Cl. Aug. 14, 2014).  The Court of Claims action was assigned to Judge Sweeney, who had already been assigned a related takings case brought by Fairholme Funds.[1]  *See* Compl., *Fairholme Funds, Inc., v. United States*, No. 13 Civ. 465 (Fed. Cl. July 9, 2013).

On September 30, 2014, this Court dismissed the Consolidated Class Action, along with three other individual lawsuits, that had presented a number of claims closely related to the claims in *Rafter*.  *Perry Capital*, 2014 WL 4829559.  On October 10, 2014, the Clerk's Office accidentally terminated the *Rafter* case, only to fix its error later that same day.  In light of the *Perry Capital* Opinion, the defendants in *Rafter* sought an extension of time to file dispositive motions regarding the effect of *Perry Capital* on the present case.  *See* Mot., ECF No. 11.  The Court granted the defendants' unopposed motion, setting November 3, 2014, as the due date for the defendants' respective briefs.  Order, ECF No. 12.

---

[1] Fairholme Funds was one of the individual plaintiffs dismissed as part of the Court's *Perry Capital* decision.

On October 31, 2014—three days before the defendants' dispositive motions were due—the plaintiffs filed a notice of voluntary dismissal, ECF No. 16, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). The Clerk's Office terminated the case on November 3, 2014. Three weeks later, Judge Sweeney of the Federal Court of Claims granted the *Rafter* plaintiffs' leave to file an amicus brief in the *Fairholme* action. *Fairholme*, No. 13 Civ. 465 (Fed. Cl. Nov. 24, 2014), ECF No. 108. In *Fairholme*, the government defendants had recently filed a motion for stay pending appeal of the *Perry Capital* decision to the Court of Appeals for the District of Columbia Circuit, or, in the alternative, dismissal based on *Perry Capital*'s alleged preclusive effect. *Id.*, ECF No. 103. The amicus brief noted that the *Perry Capital* decision cannot preclude the *Rafter* plaintiffs' related case in front of Judge Sweeney due to their voluntary dismissal of the case in front of this Court. *See* Amicus Brief 2-3 & n.1, *id.*, ECF No. 107-1.

Two weeks following the *Rafter* plaintiffs' amicus brief in *Fairholme* arguing against preclusion, the defendants in the present case filed their motion to strike the notice of voluntary dismissal. Mot., ECF No. 17. The defendants further request that the Court "declare that [the] [p]laintiffs' action was consolidated with the Consolidated Class Action pursuant to the Consolidation Order[] [and] [] declare that the Court's *Perry Capital* Order dismissing the Consolidated Class/Derivative Action also dismissed this action . . . ." *Id.* at 12.

## II.    ANALYSIS

The Consolidation Order outlined the process necessary to consolidate a newly-filed or transferred "putative class action and/or derivative action that arises out of the subject matter of the Consolidated Class Action." The Clerk of the Court "shall . . . mail a copy of th[e] [Consolidation] Order to the attorneys for the plaintiff(s) in the newly filed . . . case" and "make the appropriate entry in the docket for this action." Consolidation Order ¶ 6(b), (c). The Court

designed such a procedure to provide notice to the plaintiffs in the newly filed case that the Clerk's Office will consolidate their class/derivative action with the existing Consolidated Class Action *unless* they object to consolidation within ten days of receipt of the Order, "and this Court deems it appropriate to grant such [objection]." *See id.* ¶ 7. Moreover, the Order "*requests the assistance of counsel* in calling to the attention of the Clerk of this Court the filing . . . of any case which might properly be consolidated . . . ." *Id.* ¶ 3 (emphasis added). The implication of paragraph three is that the Clerk's Office—and the Court, for that matter—will not act sua sponte to declare that a newly filed lawsuit is consolidated with the Consolidated Class Action. An obvious means for the government defendants to call the attention of the Clerk's Office or the Court to a possible consolidation scenario in *Rafter* would have been to file a motion for consolidation. If the defendants had filed such a motion here, the plaintiffs would have had an opportunity to argue that their claims were, in fact, direct rather than derivative.

But the defendants never filed such a motion, or "called to the attention of the Clerk['s Office]" in any manner that this case "might be properly consolidated." *See id.* Consequently, the Clerk's Office never filed a copy of the Consolidation Order on the *Rafter* docket or mailed a copy to the plaintiffs, and the plaintiffs never had an opportunity to object to any potential consolidation. Instead, the defendants clearly believed this case would proceed separately, filing an unopposed motion for extension of time to submit dispositive motions "that address[] the effect of the *Perry Capital* decision on this case." Mot. 1-2, ECF No. 11. Nowhere in that motion—the defendants' only filing in this matter prior to their motion to strike the plaintiffs' notice of voluntary dismissal—did the defendants broach the issue of consolidation. Therefore, no consolidation occurred here.

This defined process for consolidation is especially important for cases, such as the one at present, where it is necessary for the Court to determine whether claims styled as direct in the wording of a complaint are, in fact, derivative and, therefore, qualify for consolidation under the Consolidation Order. The defendants contend that the Court's *Perry Capital* decision resolved that the *Rafter* plaintiffs' claims are derivative. It is true that there are apparent similarities in the nature of the fiduciary duty claims brought by both the plaintiffs in the instant suit, *see* Compl. Counts V-VII, and the *Fairholme* plaintiffs as part of the *Perry Capital* case, *see* Compl. Count VII, *Fairholme Funds, Inc. v. FHFA*, No. 13 Civ. 1053 (D.D.C. July 10, 2013), ECF No. 1. Yet the portions of the *Perry Capital* Opinion that, according to the defendants, allegedly "settled any debate" as to the nature of the *Rafter* plaintiffs' fiduciary duty claims are dicta that have no dispositive effect here. *See* Reply 2 (citing *Perry Capital*, 2014 WL 4829559, at *12 n.24, *16 n.39, *17, *19 n.45). Indeed, the *Perry Capital* Opinion explained that it was unnecessary for the Court to decide the question of whether the *Fairholme* plaintiffs' claims were direct or derivative. *Perry Capital*, 2014 WL 4829559, at *12 n.24 ("[T]here is no requirement for the Court to decide whether such claims are derivative or direct."). Rather, the Opinion only noted that *if* it had been necessary to decide such a question, the Court would have characterized the *Fairholme* plaintiffs' fiduciary duty claims, in the context of that lawsuit, as derivative. *Id.*[2] Here, the defendants never posed such a question to the Court. Consequently, the Court had no occasion to decide whether the plaintiffs' purportedly direct fiduciary duty claims were actually derivative and, thus, should be consolidated.

---

[2] Similarly, the defendants' remaining citations are to segments of the *Perry Capital* Opinion discussing a hypothetical scenario under which the plaintiffs were able to claim *present*—rather than prospective—damages regarding liquidation preferences and, to a lesser extent, dividend rights. *See id.* at *16 n.39, *17, *19 n.45. As the Court made clear, the plaintiffs *failed* to plead present damages. *E.g.*, *id.* at *16 n.39 (finding that the plaintiffs' liquidation preference claims were not ripe). Moreover, such dicta was not part of the Court's holding and in no way worked to *automatically* consolidate the *Rafter* plaintiffs' case with the cases decided in *Perry Capital*.

5

Finally, the Court feels obligated to respond to the government defendants' apparent suggestion that the *Rafter* case was properly closed, presumably in accordance with the Consolidation Order, only to be reopened again at the ex parte insistence of the *Rafter* plaintiffs' counsel. *See* Reply 3 & n.4. In truth, the Clerk's Office inadvertently terminated the *Rafter* case on October 10, 2014—the same day it correctly terminated the multiple cases involved in the Court's *Perry Capital* decision. This error was likely due to the fact that, following a notice submitted by the *Rafter* plaintiffs on August 15, 2014, ECF No. 3, *Rafter* was designated as "related" to the numerous plaintiffs whose claims the Court dismissed in *Perry Capital*. What is certain, however, is that, some hours later, the Clerk's Office reopened the *Rafter* case because the Court, upon receiving a termination notice as to *Rafter* through the ECF email system, informed the Clerk's Office of its blunder. Conspiracy theories aside, the defendants should rest assured that the Clerk's Office was not acting at the unilateral behest of the *Rafter* plaintiffs' counsel when it corrected its mistaken closure of the case. Since the defendants never raised the issue of consolidation, and the Court never filed any order on the docket, sua sponte, consolidating this case, it is inconceivable that the Clerk's Office decided, on its own accord, to terminate this case because it believed that *Rafter*'s purportedly direct claims were, in fact, derivative.[3]

Frustrated by the fact that the plaintiffs' voluntary dismissal occurred "one business day before Defendants' planned filing of dispositive motions," Mot. 6, and aware that the purpose of voluntary dismissal may have been to permit the plaintiffs to argue that preclusion does not apply to a separate action filed in another federal court, *id.* at 6-7; *see also* Amicus Brief 2-3 &

---

[3] The defendants seem to concede as much when they note that, "Plaintiffs cannot evade the effect of consolidation when their own actions—namely, designating their derivative claims as 'direct'—undoubtedly prevented the Clerk's Office from taking the[] administrative step[] [of consolidating the *Rafter* action with the existing class actions]." Reply 4.

n.1, *Fairholme*, No. 13 Civ. 465 (Fed. Cl. Nov. 21, 2014), ECF No. 107-1, the defendants seek to unwind the plaintiffs' voluntary dismissal of this case.  There is no doubt that the plaintiffs voluntarily dismissed their case as part of a broader litigation strategy—and not because they suddenly decided their claims had no merit.  But strategic conduct in the face of high-stakes litigation is not a punishable offense.

### III.     CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the defendants' motion to strike the plaintiffs' notice of voluntary dismissal [17] is **DENIED**.  This case remains dismissed.

Signed by Royce C. Lamberth, United States District Judge, on January 21, 2015.